## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| GARY NOVICH | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No.: 3:20-cv-374 |
| | ) | |
| CHIEF KENNETH M. ROZELL | ) | |
| In his official capacity only, | ) | |
| | ) | Jury Trial Demanded |
| and | ) | |
| | ) | |
| OFFICER NICHOLAS S. ARNOLD, | ) | |
| In his individual capacity only, | ) | |
| | ) | |
| Defendants. | ) | |

## **COMPLAINT FOR DAMAGES UNDER 42 U.S.C. §§ 1983 AND 1988**

COMES NOW plaintiff, Gary Novich, by and through his undersigned counsel, Joseph Rousseau, and for his Complaint for Damages under 42 U.S.C §§ 1983 and 1988 against defendants Chief Kenneth M. Rozell, who is being sued in his official capacity only, and Officer Nicholas S. Arnold, who is being sued in his individual capacity only, states as follows:

## **PRELIMINARY STATEMENT OF CLAIM**

1. Plaintiff, Gary Novich, seeks money damages from defendants, Chief Kenneth M. Rozell (hereinafter "Defendant Rozell") and Officer Nicholas S. Arnold (hereinafter "Defendant Arnold"), for violating his constitutional rights in relation to

Defendant's police dog, or K-9, repeatedly biting him and causing him severe injuries and other damages in the course of his being arrested.

2.      Plaintiff was a victim of excessive force by Defendant Arnold, by and with his K-9 partner, a large German Shepherd, in violation of the Fourth Amendment to the United States Constitution.

3.      The above violation of Plaintiff's Constitution rights was proximately caused by Defendant Rozell's, as final policymaker for the Granite City Police Department, failure to properly train, supervise and discipline Defendant Arnold.

4.      Plaintiff brings suit under 42 U.S.C §§ 1983 and 1988.

## JURISDICTION

5      This Court has jurisdiction of this suit pursuant to 28 U.S.C §§ 1331 and 1343.

## VENUE

6.      Venue is proper in this Court under 28 U.S.C § 1391(b), as all of the events giving rise to this suit occurred in this Judicial District and, upon information and belief, Defendants reside in this Judicial District.

## PARTIES

7.      Plaintiff resides in Granite City, Madison County, Illinois.

8.      Upon information and belief, Defendants reside in Granite City, Madison County, Illinois.

9.      At the time of the incident described in this Complaint and at all other times relevant herein, Defendant Rozell was the Chief of the Granite City Police Department and its final policymaker.

10.     At the time of the incident described in this Complaint and at all other times relevant herein, Defendant was a police officer with the Granite City Police Department, Department Serial Number 237.

11.      Defendant Arnold was working as an on-duty police officer, with his K-9, and acting within the scope and course or his official duty and employment as a police officer, under the color of Illinois law, at the time of the incident described in this Complaint.

12.     Defendant Rozell is being sued in his official capacity only.

13.     Defendant Arnold is being sued in his individual capacity only.

### **FACTS**

14.     On December 9, 2018, Plaintiff was 68 years old.

15.     As of December 9, 2018, Plaintiff possessed a valid Illinois Driver's License.

16.     As of December 9, 2018, Plaintiff had no outstanding warrants for his arrest.

17.     As of December 9, 2018, Plaintiff had no history of any arrest, much less any guilty plea or conviction, related to any criminal charge involving allegations of violence, attempted violence or resisting arrest.

18.    During the late afternoon/early evening of December 9, 2018, Plaintiff had several alcoholic drinks at a bar in Granite City, Illinois.

19.    At or around approximately 7:00 p.m. on December 9, 2018, Plaintiff decided to leave the bar and drive himself to his home.

20.    Although he had been drinking alcohol, Plaintiff believed he could safely drive himself to his home.

21.    Plaintiff's vehicle was properly registered to him in the state of Illinois and bore license plate number E407951.

22.    After leaving the bar in his vehicle, which had its headlights activated, Plaintiff accidentally hit three or four vehicles, which did not have occupants, parked next to each other at or about the 2400 block of Edison Avenue in Granite City, Illinois, which damaged both his vehicle and the parked vehicles.

23.    After hitting the parked vehicles, Plaintiff made a rash and unwise decision to leave the scene of the accident and continue his drive home.

24.    Shortly after it occurred, the Granite City Police Department was notified of the above-described accident by one or more 911 calls.

25.    Upon receiving notice of the accident, Granite City police officers, including Defendant Arnold, who had his K-9 with him in his police vehicle, were dispatched to locate the vehicle that caused the accident.

26.     Sometime between 7:05 p.m. and 7:07 p.m., an off-duty Granite City police officer, Sergeant Jeffrey Grote, Department Serial Number 180, while driving his personal vehicle, located Plaintiff as Plaintiff was driving home.

27.     Sergeant Grote then got behind Plaintiff's vehicle and radioed their location to dispatch and his fellow police officers, including Defendant Arnold, as he followed Plaintiff's vehicle.

28.     Sergeant Grote also reported to dispatch and his fellow police officers, including Defendant Arnold, the make, model and description of Plaintiff's vehicle, including its license plate.

29.     Based on Sergeant Grote's information, police learned that Plaintiff's vehicle was registered to Plaintiff, that the vehicle was not reported as stolen, that Plaintiff was 68 years old, and that Plaintiff had no outstanding warrants, among other things; they also learned Plaintiff's home address.

30.     After learning the above information, at 7:11 p.m., Defendant, with his vehicle's emergency lights and sirens activated, reached Plaintiff's vehicle and drove up behind it.

31.     At this point, Defendant Arnold saw that Plaintiff was driving his vehicle in a slow manner, well below the posted speed limit.

32.     At this point, Defendant Arnold knew that he and Plaintiff were a short distance from Plaintiff's home address.

33.     Plaintiff continued to drive slowly, well below the speed limit, until he reached his home, at which point he slowly rolled into his driveway and parked his vehicle immediately next to his home, which was an end unit in a four unit single story apartment building

34.     Based on his police training, the information he learned from fellow officers and dispatch while en route to Plaintiff and his observation of how Plaintiff was driving his vehicle, Defendant Arnold knew, as any objectively reasonable and competent police officer would have known, that it was likely that Plaintiff was intoxicated by a depressant, such as alcohol.

35.     Prior to Plaintiff parking his vehicle, when Plaintiff was first turning into his driveway, Defendant Arnold had an opportunity to use his vehicle to block the path of Plaintiff's vehicle, broadside Plaintiff's vehicle or knock Plaintiff's vehicle off of the road/driveway.

36.     Defendant Arnold did not believe that Plaintiff posed a threat of imminent danger to him, other responding officers or the public at large.

37.     Instead of attempting to use his vehicle to stop Plaintiff's vehicle before it reached Plaintiff's home, Defendant parked his vehicle next to Plaintiff's driveway.

38.     At this point Defendant Arnold knew that Sergeant Grote was following immediately behind him in his personal vehicle and that he would be able to assist him with his arrest of Plaintiff.

39.     Sergeant Grote arrived at the scene at the same time as, or just moments after, Defendant Arnold, and he immediately parked and existed his vehicle to assist Defendant Arnold.

40.     Another Granite City police officer, Officer Matthew Hibbets, Department Serial Number 213, while driving to assist Defendant Arnold and less than one block from Plaintiff's home, observed Defendant Arnold as Defendant Arnold parked his police vehicle near Plaintiff's driveway, and he immediately radioed to Defendant Arnold that he was "right there with you" to help with the arrest of Plaintiff.

41.     After parking his vehicle, Defendant exited his vehicle, went to the driver-side rear door of his vehicle, opened the door, used his hand to secure his K-9 by the collar – no leash was used – and then ran toward Plaintiff's parked vehicle with his K-9.

42.     Officer Hibbets arrived at the scene approximately three (3) seconds after Defendant Arnold left his police vehicle, and he immediately parked and exited his vehicle to assist Defendant Arnold.

43.     Having reached his home and after parking and shutting off his vehicle, Plaintiff opened the driver door and began to exit his vehicle in order to surrender to police.

44.     Just as he was beginning to exit his vehicle, Plaintiff observed Defendant Arnold and a large, unleashed, uncontrolled and snarling German Shepherd K-9, at close proximately, running toward him.

45.     Upon observing Defendant Arnold and his snarling K-9 running toward him, Plaintiff, out of surprise and fear of being attacked and bitten, started backward.

46.     At this time the K-9 reached Plaintiff and, instead of biting and holding, began violently and repeatedly biting Plaintiff's left arm, causing numerous serious puncture wounds and other injuries.

47.     When Defendant Arnold's K-9 bit Plaintiff, Plaintiff was seized.

48.     After allowing Plaintiff, who was not actively resisting, to be repeatedly bitten and attacked by his K-9 for an unnecessarily and unreasonably long time, Defendant Arnold called off and gained control of his K-9, and the police officers at the scene then handcuffed and arrested Plaintiff without further incident.

49.     Defendant Arnold had a duty to Plaintiff under the law and the policies of the Granite City Police Department to, prior to releasing his K-9 to bite Plaintiff, make an announcement or warning that he had a K-9 which would be released if Plaintiff failed to comply with his directives.

50.     After Defendant Arnold exited his vehicle and through the time Plaintiff was attacked, Defendant Arnold and the other officers at the scene made no announcement or warning that Defendant Arnold had a K-9 with him which would be released to bite Plaintiff if he failed to comply with Defendant Arnold's directives.

51. After Defendant Arnold exited his vehicle and through the time Plaintiff was attacked, Defendant Arnold and the other officers at the scene gave no verbal directives to Plaintiff.

52. After parking and shutting off his vehicle next to Plaintiff's home, Defendant Arnold did not give Plaintiff an opportunity to surrender before he released his K-9 to attack Plaintiff.

53. After Plaintiff parked and shut off his vehicle next to his house and began to exit his vehicle, Defendant Arnold did not believe that Plaintiff posed a threat of imminent danger to the officers at the scene or the public at large.

54. After arriving home, parking and shutting off his vehicle, Plaintiff intended to surrender to police, and he would have complied with any directives given by Defendant Arnold or other police officers at the scene to accomplish such surrender.

55. At the time of Plaintiff's attack, Defendant Rozell, as the Chief of the Granite City Police Department, was in charge of training, supervising and disciplining Granite City police officers.

56. At the time of Plaintiff getting attacked and bitten, Defendant Rozell, as the Chief of the Granite City Police Department, was the final policymaker for the procedures related to the training, supervising and disciplining of Granite City police officers; he was also responsible for overseeing such procedures.

57.    At the time of Plaintiff getting attacked and bitten, under the Granite City Police Department's polices, K-9 Officers are allowed to release their K-9 to apprehend a suspect only if such suspect poses a risk of immediate danger to police officers or other members of the public.

58.    At the time of Plaintiff getting attacked and bitten, under the Granite City Police Department's polices, K-9 Officers are to give an announcement and warning before a K-9 is released to apprehend a suspect.

59.    At the time of Plaintiff getting attacked and bitten, under the Granite City Police Department's polices, K-9 Officers are to have their K-9 trained so that it uses a "bite and hold" technique when apprehending  suspect.

60.    It is a violation of a suspect's Constitutional right to be free from excessive force when a K-9 repeatedly and violently bites such suspect instead of using a "bite and hold" technique.

## COUNT I
### Officer Arnold
### Excessive Force

61.    Plaintiff incorporates by reference all prior paragraphs.

62.    Given the totality of the circumstances, no objectively reasonable police officer would have believed that Plaintiff posed a threat of immediate danger to the officers at the scene or the public at large after Plaintiff parked and shut off his vehicle and began to exit the vehicle.

63.    Given the totality of the circumstances, no objectively reasonable K-9 police officer would have utilized his K-9 to apprehend Plaintiff.

64.    Given the totality of the circumstances, Defendant Arnold's act of releasing his K-9 to attack and bite Plaintiff was objectively unreasonable, reckless and constituted the use of excessive force under the Constitution.

65.    Given the totality of the circumstances, Defendant Arnold's act of releasing his K-9 to attack and bite Plaintiff without first giving Plaintiff an announcement and warning of the same was objectively unreasonable, reckless and constituted excessive force under the Constitution.

66.    Defendant Arnold's act of allowing his K-9 to repeatedly violently bite Plaintiff, instead of utilizing a "bite and hold" technique, was objectively unreasonable, reckless and constituted excessive force under the Constitution.

67.    As a direct and proximate result of Defendant Arnold's above-described unlawful actions, Plaintiff suffered serious injuries, has and will continue to suffer pain and discomfort, has undergone and in the future will continue to undergo medical treatment, has incurred and in the future will continue to incur medical bills, has experienced and in the future will continue to experience a loss in the quality of his life, and has experienced and in the future will continue to experience disability.

WHEREFORE, plaintiff, Gary Novich, prays for judgment in his favor, and against defendant, Officer Nicholas S. Arnold, for compensatory and punitive damages under 42

U.S.C § 1983; for costs, attorney fees and expert fees under 42 U.S.C § 1988; and for such further relief as this Court deems proper and just.

**Plaintiff Demands Trial by Jury.**

**COUNT II**
**Chief Kenneth M. Rozell**
**Failure to Adequately Train, Supervise and Discipline**

68.    Plaintiff incorporates by reference all prior paragraphs.

69.    At all times relevant herein, Defendant Rozell had a duty to properly train, supervise and discipline Granite City Police Department officers, including Defendant Arnold.

70.    Defendant Rozell failed to adequately train, supervise and discipline Defendant, or otherwise failed to ensure that Defendant was adequately trained, supervised or disciplined, on when to utilize his K-9 for seizing suspects, as training and supervision were insufficient in duration and frequency and his violations of this policy were not subject to discipline.

71.    Defendant Rozell failed to adequately train, supervise and discipline Defendant Arnold, or otherwise failed to ensure that Defendant Arnold was adequately trained, supervised or disciplined, to utilize an announcement and warning before utilizing his K-9 to seize suspects, as training and supervision were insufficient in duration and frequency and his violations of this policy were not subject to discipline.

72.     Defendant Rozell failed to adequately train, supervise and discipline Defendant Arnold, or otherwise failed to ensure that Defendant Arnold was adequately trained, supervised or disciplined, to ensure that his K-9 utilized the "bite and hold" technique when seizing suspects, as training and supervision were insufficient in duration and frequency and his violations of this policy were not subject to discipline.

73.     The above failures resulted in a pervasive policy, pattern, practice or custom tacitly sanctioned by Defendant Rozell, as Chief and final policymaker of the Granite City Police Department, which violated individuals', including Plaintiff's, right under the Constitution to be free from excessive force.

74.     The above failures amounted to a deliberate indifference to individuals', including Plaintiff's, Constitutional right to be free from excessive force being violated.

75.     The above failures to adequately train, supervise and discipline Defendant Arnold were a direct and proximate cause of, and a moving force behind, the violation of Plaintiff's Constitutional right to be free from excessive force and, as a result of such, Plaintiff suffered serious injuries, has and will continue to suffer pain and discomfort, has undergone and in the future will continue to undergo medical treatment, has incurred and in the future will continue to incur medical bills, has experienced and in the future will continue to experience a loss in the quality of his life, and has experienced and in the future will continue to experience disability.

WHEREFORE, plaintiff, Gary Novich, prays for judgment in his favor, and against defendant, Chief Kenneth M. Rozell, for compensatory and punitive damages under 42 U.S.C § 1983; for costs, attorney fees and expert fees under 42 U.S.C § 1988; and for such further relief as this Court deems proper and just.

**Plaintiff Demands Trial by Jury.**

Respectfully submitted,

/s/ Joseph A. Rousseau
Joseph A. Rousseau, #6290617
Attorney for Plaintiff
7777 Bonhomme Ave., Ste 1800
St. Louis, MO 63105
T: 314-312-1111  F: 833-929-3463
joseph@wayfinderlaw.com